UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RONEY JAUWAN ADDISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV424-045 |
| | ) | |
| SHEFF JONNY WELTCHER, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

The Court previously granted *pro se* plaintiff Roney Jauwan Addison's request to proceed *in forma pauperis*. *See* doc. 4. He has returned the required forms. *See* docs. 6 & 7. He has, however, not yet complied with the District Judge's Order concerning assignment of this case to a United States Magistrate Judge. *See* doc. 5; *see also* doc. 3. To the extent that he can address the issues discussed below, and wishes to pursue this case, he must also comply with that Order. Given that Addison has returned the forms required to proceed *in forma pauperis*, the Court has conducted the screening required by 28 U.S.C. § 1915A below. However, before reaching the substance of Addison's Complaint, the Court must address a discrepancy between his financial disclosures,

in support of his application to proceed *in forma pauperis*, *see* doc. 2, and the financial information produced by the custodian of his prisoner trust account, doc. 7.

In his application to proceed *in forma pauperis*, Addison disclosed only $100 in total deposits to his prison trust account in the six months preceding the Complaint. Doc. 2 at 2. The accounting submitted by the custodian of his prison trust account indicates that he actually received $200 in deposits during that period. *See* doc. 7 at 2. Courts, including this Court, have recognized that dismissal is an appropriate sanction when a plaintiff provides false financial information in support of an application to proceed *in forma pauperis*. *See, e.g., Wise v. Forth*, 2011 WL 1637411, at *1 (S.D. Ga. Apr. 29, 2011); *see also Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997); *Johnson v. Chisolm*, 2011 WL 3319872 at *1 n. 3 (S.D. Ga. Aug. 1, 2011) ("This Court does not hesitate to invoke dismissal and other sanctions against inmates who lie to or otherwise deceive this Court."). Even where dismissal is not an appropriate sanction, *in forma pauperis* status may be revoked. *See, e.g., Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). Rather than immediately recommend dismissal on the grounds that Addison has

"'falsely understate[d his] net worth in order to obtain *in forma pauperis* status when [he is] not entitled to that status based on [his] true net worth,'" *Attwood*, 105 F.3d at 613 (quoting *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990)), the Court will afford him an opportunity to explain the discrepancy. Addison is **DIRECTED** to respond to this Order by no later than April 17, 2024, and **SHOW CAUSE** why his case should not be dismissed for misrepresenting his finances.

Although Addison must address his failure to comply with the District Judge's Order and explain the inaccuracy in his original financial disclosure, to avoid unnecessary delay, the Court proceeds to screen his Complaint. *See* 28 U.S.C. § 1915A. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however,

fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Addison's factual allegations are somewhat limited. He alleges that in October of 2023, his clothes, and perhaps his mattress[1], were taken. *See* doc. 1 at 5. He was given a "paper g[o]wn" and a blanket and confined in a cell that had only a steel bed and which was "filthy." *Id.* He alleges that the cell contained mold and insects. *Id.* He alleges that he was fed "loafs," which caused issues with his digestion. *Id.* He also alleges that he "got spraded with sprey [sic]," and "hit" by Officer Lennerd. *Id.* Finally, he alleges that he was not allowed to receive phone calls. *Id.* He has named as defendants the Chatham County Sheriff, John Wilcher,[2] Chatham County Jail, and Officer Lennerd. *See id.* at 1, 3. As relief, Addison seeks release from his incarceration and monetary damages. *Id.* at 6.

---

[1] Addison's allegations refer several times to a "mate." *See* doc. 1 at 5. In context, the Court infers that "mate" is a misspelling of "mattress." *See id.* ("I slept on a steal [sic] bed no mate . . .").

[2] Addison has misspelled Sheriff Wilcher's name as "Johnny Weltcher." *See* doc. 1 at 1, 3. Since the Complaint does not state any claim against Sheriff Wilcher, that misspelling is likely moot. To the extent that Addison amends his Complaint, as discussed below, to assert any claim against Sheriff Wilcher, the Court will address the misspelling upon screening the Amended Complaint.

First, Addison's request for immediate release should be dismissed as such relief is not available in a § 1983 action. "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. . . . He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quotes and cites omitted); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). Addison's request for release should, therefore, be **DISMISSED**.

Second, the Chatham County Jail is not a proper defendant. Liability under § 1983 is limited to "persons," and "[u]nder Georgia law and binding federal precedent, a prison, jail, or other detention facility . . . is not a legal entity subject to suit." *Barnett v. Hancock State Prison*, 2024 WL 1050092, at *3 (M.D. Ga. Mar. 11, 2024). As this Court has explicitly held, "the Chatham County Jail is not a legal entity capable of being sued." *Smith v. Chatham Cnty. Sheriff's Dept.*, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012). Accordingly, to the extent that Addison

5

asserts claims against Chatham County Jail, those claims should be **DISMISSED**.

Addison's claims against Sheriff Wilcher are also defective. His factual allegations do not mention Wilcher at all. It, therefore, appears that he seeks to hold Wilcher liable in his supervisory capacity. However, § 1983 claims cannot be asserted based on alleged vicarious liability. *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) ("Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*."). Given the limited allegations in Addison's Complaint, the Court cannot conclude that a claim against Sheriff Wilcher is impossible, however. Addison will, therefore, have an opportunity to assert any such claim by amendment, as discussed below.

In addition to the issues with the claims and parties, Addison's allegations also fail to adequately allege any constitutional violation. His complaints about the conditions of his confinement implicate his rights under the Eighth Amendment. The Eighth Amendment's prohibition on "cruel and unusual punishment" generally applies in circumstances where individuals are subjected to unconstitutional conditions of

confinement. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition. *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials."). "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

"[T]he Constitution does not mandate comfortable prisons . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The conditions that Addison complains about do not clearly rise to the level of severe deprivations that would violate the Constitution. Confinement without clothes, other than a paper gown, for limited periods does not violate the Constitution. *See, e.g., Turner v. Warden, GDCP*, 650 F. App'x 695, 701-02 (11th Cir. 2016) (prisoner "left in a strip cell for ten days without clothing" did not allege a sufficiently serious condition to violate the Eighth Amendment). Confinement in a cell with only a steel bed, without a mattress, does not violate the Constitution. *See, e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency." (citation omitted)). The presence of mold and insects in a cell also do not necessarily violate the Constitution. *See, e.g., Brown v. Withrow*, 985 F.2d 559 (6th Cir. 1993) (presence of "rats, roaches and ants in [a] cell" did not violate the Eighth Amendment); *Marine v. Kelly*, 2019 WL 2587814, at *4 (N.D. Fla. May 17, 2019) ("The conditions of which Plaintiff complains— the presence of black mold in the shower, dayroom, and cell—are not

sufficiently serious or extreme to run afoul of the Eighth Amendment."). Finally, a restriction of food to "loaf," sometimes called "Nutri loaf," does not necessarily violate the Constitution. *See, e.g., Mestre v. Wagner,* 488 F. App'x 648, 649 (3d Cir. 2012). However, Addison's allegations concerning the conditions of his confinement are simply too vague for the Court to make a definitive determination that he could not state a claim.

Addison's allegations that he was "spra[y]ed with spr[a]y" and "hit" implicate possible excessive force claims. *See* doc. 1 at 5. It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).

9

As above, Addison's allegations are simply too vague to sufficiently state any excessive force claim.

Finally, Addison alleges that he was not allowed to receive phone calls. *See* doc. 1 at 5. Despite their incarceration, prisoners do retain a constitutional right to communicate with people outside of the prison. *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996). But this right is not absolute. *See Washington v. Reno*, 35 F.3d 1093, 1099-1100 (6th Cir. 1994); *Pitsley v. Ricks*, 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) ("Courts considering prison telephone restrictions have agreed that an inmate has no right to unlimited telephone use."). Instead, a prisoner's right to phone access is "'subject to rational limitations in the face of legitimate interests of the penal institution.'" *Padgett v. Mosley*, 2007 WL 2409464, at *8 n.2 (M.D. Ala. Aug. 20, 2007) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Moreover, "[a] prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him." *Acosta v. McGrady*, 1999 WL 158471, at *7 (E.D. Pa. March 22, 1999); *see also Pope*, 101 F.3d at 1385 (noting that prisoner had "alternate means" of exercising First Amendment right to communicate with family and friends "because he

10

could receive visitors and correspond with virtually anyone he wished"). Addison's allegation is, again, too vague to state any claim.

Although the Complaint fails to state any claim, Addison is entitled to an opportunity to amend before dismissal. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."). Accordingly, Addison is **DIRECTED** to submit an Amended Complaint clarifying his allegations of the conditions of his confinement, his allegations of a prison official's use of excessive force, and his allegations related to his inability to use the telephone by no later than April 17, 2024. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Addison is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Addison is further advised that failure to timely submit his amended complaint may result in a recommendation that this

case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

In summary, to pursue this case, Addison must address his failure to comply with the District Judge's Order. *See, e.g.,* doc. 5. He is also **DIRECTED** to respond and **SHOW CAUSE** why his case should not be dismissed because his application to proceed *in forma pauperis* misrepresented the deposits to his prisoner trust account by no later than April 17, 2024. His claim seeking immediate release and his claims against the Chatham County Jail should be **DISMISSED**. Finally, he is **DIRECTED** to amend his § 1983 claims, seeking monetary relief, concerning the conditions of his confinement, excessive force, and access to telephone calls by no later than April 17, 2024.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for

additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Finally, the Court must assess Addison's filing fee. *See* 28 U.S.C. § 1915(b). Addison's Prisoner Trust Account Statement indicates average monthly deposits of $86.67. Doc. 7 at 1. He, therefore, owes an initial partial filing fee of $17.33. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," based upon average deposits to or balance in a prisoner's account, under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has

13

been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[3]

**SO ORDERED AND REPORTED AND RECOMMENDED**, this <u>3rd</u> day of April, 2024.

                          */s/ Christopher L. Ray*
                          CHRISTOPHER L. RAY
                          UNITED STATES MAGISTRATE JUDGE
                          SOUTHERN DISTRICT OF GEORGIA

---

[3] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.